STATE of Missouri,
Plaintiff-Respondent,

v.

Billy Joe GARRETT,
Defendant-Appellant.

No. 13514.

Missouri Court of Appeals,
Southern District,
Division Three.

Nov. 27, 1984.

Motion for Rehearing Overruled and
Transfer to Supreme Court Denied
Dec. 13, 1984.

Application to Transfer Denied
Jan. 15, 1985.

John D. Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Mary E. Burnett, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

David E. Woods, Public Defender, Poplar Bluff, for defendant-appellant.

PER CURIAM.

Following jury trial defendant was convicted of second-degree arson and sentenced as a persistent offender to ten years' imprisonment. He appeals.

For his first point defendant contends that there was insufficient evidence to support the verdict because the state failed to show that the fire was knowingly set by him. As defendant asserts, there was no direct evidence that he started the fire.

In determining if the evidence is sufficient to support the verdict, the evidence and all reasonable inferences must be considered in the light most favorable to the state and all evidence and inferences to the contrary disregarded. *State v. Buffington*, 588 S.W.2d 512, 514 (Mo.App.1979).

Any fact can be established by circumstantial evidence. *State v. Chase*, 444 S.W.2d 398, 402 (Mo. banc 1969). To establish facts by circumstantial evidence the circumstances must be such as are inconsistent with defendant's innocence, but it is not necessary that they be absolutely conclusive of his guilt. *State v. McGee*, 592 S.W.2d 886, 887 (Mo.App.1980).

The circumstances here strongly indicate that the fire was set and that defendant set it. Defendant, his wife, their three children, and his two stepdaughters lived in a rental house in Charleston, Missouri. On July 21, 1981, defendant and his wife purchased a $5,000 insurance policy insuring the contents of their house against various perils, including fire. The house suffered fire damage on Sunday, August 30, 1981.

Defendant's stepdaughter, Michelle Lamb, stated that on the afternoon of August 30, 1981, pictures, baby clothes and articles were taken from the house to defendant's mother's home. Earlier other clothes and pictures had been taken there. Michelle testified that a few days before the fire defendant told his wife, "Maybe we will do it Saturday." On Saturday, August 29, he said, "We will do it tomorrow night." At that time Michelle did not know what defendant was talking about.

On the afternoon of August 30, defendant carried newspapers into the southeast bedroom and spread the papers on the floor of the closet and onto the bed. Defendant also moved some clothes in that bedroom from the back to the front of the closet. When Tammy Lamb, the other stepdaughter, asked defendant about the newspapers and the clothes, defendant said he did it and for her to leave them alone.

On August 30, at approximately 7:30 p.m., Tammy went across the street to babysit. About an hour later Michelle, her mother, and the rest of the children left to go to defendant's mother's house, leaving defendant home. At defendant and his wife's request, Michelle stopped across the street to tell Tammy not to go back to the house when she was through babysitting, but to go to defendant's mother's house.

Tammy saw defendant sitting on the porch of the house smoking a cigarette at approximately 9:30 p.m. Defendant then got up, went into the house, and walked through it. Then he came out and walked from the house, past his landlord's house, "and then he took off running around the

corner." She said that "about five or ten minutes later, the house was in flames."

Later that evening Tammy saw defendant at his mother's house. Defendant was in the back bedroom with the lights off and said if the "cops" or anybody came looking for him to tell them he wasn't there.

A firefighter, who responded to an alarm of the fire, said the doors and windows of the house were locked and the windows down, highly unusual for August. He went to the rear of the building where the fire was coming out through a broken window. He busted in the rear door to get to the fire and upon entering noticed that the door to the southeast corner bedroom was closed and had rags piled against it.

There was evidence that it was a warm day, there were no other fires in the area, and that there were no electrical storms. The fire chief stated that the fire started in the southeast bedroom. There were no electrical wires near where it started. There was evidence that the house was sparsely furnished and defendant stood to gain monetarily by the fire.

The removal of items and the obvious preparation for the fire and the statements as to when appellant was going to "do it" strongly indicate he was preparing to set a fire. He was the only one present in the house, and then left it, walked for awhile, and then ran from it shortly before it started burning.

■ The evidence was certainly sufficient that the jury could find defendant guilty beyond a reasonable doubt. These circumstances are inconsistent with his innocence and taken together supply sufficient evidence to support the charge. This point is denied.

For his second point defendant states that the trial court erred in allowing the fire chief to testify where the fire started because he was not sufficiently qualified as an expert.

■ By reason of education or specialized experience, a witness who possesses superior knowledge respecting a subject about which persons having no particular training are incapable of forming an accurate opinion nor drawing correct conclusions qualifies as an expert. *State v. Smith,* 637 S.W.2d 232, 235 (Mo.App.1982). The determination whether a witness qualifies as an expert rests with the discretion of the trial court, which is not disturbed on review in the absence of abuse. Id.

■ A witness may be qualified to testify as an expert although his knowledge may have been gained by practical experience rather than by scientific study or research. *State v. Myers,* 588 S.W.2d 747, 748 (Mo.App.1979). The test of expert qualification is whether he has knowledge from education or experience which will aid the trier of fact. Id.

■ The fire chief had been with the Charleston Fire Department for 25 years and had worked on approximately 100 fires a year since he started. He has had training in fire control, combat of fires and arson investigation at the University of Missouri at Columbia. These classes are given approximately one time a year. The fire chief had experience both from years of practical experience and in training. There was no abuse of discretion in allowing him to testify. This point is denied.

Defendant contends in his remaining point that the trial court erred by not allowing him to call two witnesses as rebuttal evidence. Defendant offered to prove that one of the state's witnesses, defendant's stepdaughter, Tammy Lamb, was incorrect when she testified she did not smoke and that on the night of the fire Tammy had said that defendant was in another town.

After the state had put on its case, defendant presented witnesses, then rested. The state offered no rebuttal evidence and then defendant asked to present the two "rebuttal" witnesses.

Defendant relies primarily on Rule 27.02, setting forth the order of trial by jury in a felony case. It states in part:

"(i) The parties, respectively, may offer evidence in rebuttal only, unless the

court, for good cause shown or believing that the interests of justice will be served thereby, permits the parties to offer evidence upon their original cases."

The state contends that as it offered no rebuttal evidence, rebuttal (or surrebuttal) evidence by defendant was not warranted. It also contends that the evidence tendered by these two witnesses was not proper as it was impeachment of collateral matters. We dispose of the matter on the first contention and do not decide if one or both of the matters defendant sought to show were collateral.

The admission of rebuttal evidence is discretionary with the trial court. *State v. Weeks*, 603 S.W.2d 657, 664 (Mo. App.1980). Likewise, the scope of rebuttal testimony rests within the broad discretion of the trial court. *State v. Crain*, 638 S.W.2d 761, 762 (Mo.App.1982).

Often part of the evidence initially offered by a defendant in a criminal trial is in the nature of rebuttal, rebutting the state's evidence. No explanation is made as to why this evidence was not offered earlier. It is a new matter adduced by the prosecution in rebuttal that entitles a defendant to offer surrebuttal. 23 C.J.S. Criminal Law § 1050.c, p. 1219. See also *State v. Huff*, 454 S.W.2d 920, 923 (Mo. 1970). Absent such new matter there was no abuse of discretion in not allowing defendant to present this evidence.

The judgment is affirmed.

All concur.